UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| WILLIAM STONE, as Administrator of the Estate of Joshua Paul Stone, deceased,<br><br>     Plaintiff,<br><br>vs.<br><br>ALZA CORPORATION, et al.,<br><br>     Defendants. | ]<br>]<br>]<br>]<br>]  CV-06-CO-4892-S<br>]<br>]<br>]<br>]<br>] |

MEMORANDUM OF OPINION

I.    Introduction.

Plaintiff William Stone filed suit as administrator of the Estate of Joshua Paul Stone, deceased, in the Circuit Court of Jefferson County, Alabama, on November 9, 2006.  On the 18th day of December 2006, diverse defendants Alza Corporation and Janssen Pharmaceutica Products, LP, ("removing defendants") removed the action to this Court and alleged diversity jurisdiction pursuant to 28 U.S.C. § 1332.  Dr. Robert Poczatek ("Poczatek"), a non-diverse defendant, did not join in the removal; instead, he filed a Motion to Dismiss or in the Alternative to Remand.  (Doc. 10.)

The Court currently has for consideration Plaintiff's Motion to Remand, filed on December 28, 2006 (Doc. 7), as well as Poczatek's Motion to Dismiss or in the Alternative to Remand.  In his motion, Plaintiff asserts that this action is due to be remanded because of a lack of complete diversity.  The removing defendants argue that Poczatek was fraudulently joined to defeat federal diversity jurisdiction and therefore should be disregarded for diversity determination purposes.  For the same reasons, Poczatek contends that he should be dismissed from the action.

Upon due consideration, and for the reasons that follow, Plaintiff's Motion to Remand will be denied.

II.   Facts.[1]

According to Plaintiff's complaint, prior to the death of Joshua Paul Stone ("Stone"), Poczatek prescribed a Duragesic patch designed, manufactured, and distributed by some or all of the removing defendants. Plaintiff contends that Stone died as a result of his use of the prescribed Duragesic patch ("patch").  Plaintiff further claims that the removing

---

[1]For the purpose of considering the pending motion(s), the facts are as alleged in the complaint unless otherwise indicated.  Recitation of the facts alleged by the plaintiff in this opinion is not to be construed as a verification that the allegations are true.

defendants were aware of defects in, and unreasonable dangers accompanying the use of, the patch, which they manufactured and distributed.

Plaintiff apparently, although not clearly, attempts to couch his complaint against the removing defendants as an Alabama Extended Manufacturers Liability Doctrine claim with associated claims of negligence, wantonness, breach of implied warranty of merchantability, and misrepresentation.  Even though Plaintiff utilizes the term "defendants" throughout his recitation of theories of relief, he obviously seeks to make out a claim for medical malpractice against Poczatek by asserting that Poczatek "acted in a negligent manner and below the applicable medical standard of care through his failure to warn [Stone] of the dangerous propensities of the Duragesic patch that he had prescribed." (Compl. at 5.)

III.    Standard.

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of America,* 511 U.S. 375, 377 (1994).  For removal to be proper, the court must have subject-matter jurisdiction in the case.  "Only

state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). In addition, the removal statute must be strictly construed against removal, and any doubts should be resolved in favor of remand. *See Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994). The removing defendants bear the burden of establishing subject-matter jurisdiction. *See Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97 (1921) (stating that the defendant bears the burden of proving subject-matter jurisdiction in removed actions).

IV.   Discussion.

Before this Court can exercise diversity jurisdiction, complete diversity of citizenship must exist. "Diversity jurisdiction requires complete diversity; every plaintiff must be diverse from every defendant." *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998). Poczatek is a non-diverse defendant. Acknowledging this, the removing defendants argue that his citizenship should not be considered because he was fraudulently joined with the claims against the removing defendants.

This Court is free to disregard the citizenship of any defendant it determines has been fraudulently joined. *Id.* In *Triggs,* the Eleventh Circuit Court of Appeals described three situations when a defendant can be considered to have been fraudulently joined:

> Fraudulent joinder is a judicially created doctrine that provides an exception to the requirement of complete diversity. Joinder has been deemed fraudulent in two situations. The first is when there is no possibility that the plaintiff can prove a cause of action against the resident (non-diverse) defendant. *Coker v. Amoco Oil Co.*, 709 F.2d 1433, 1440 (11th Cir. 1983), superceded by statute on other grounds as stated in *Georgetown Manor, Inc. v. Ethan Allen, Inc.,* 991 F.2d 1533 (11th Cir. 1993). The second is when there is outright fraud in the plaintiff's pleading of jurisdictional facts. *Coker,* 709 F.2d at 1440. In *Tapscott*, 77 F.3d at 1355 (11th Cir. 1996), a third situation of fraudulent joinder was identified—i.e., where a diverse defendant is joined with a nondiverse defendant as to whom there is no joint, several or alternative liability and where the claim against the diverse defendant has no real connection to the claim against the nondiverse defendant.

*Id.*

The removing defendants appear to rely on the first instance of fraudulent joinder described in *Triggs*. They argue that Poczatek was

improperly joined because, at the time of removal, the complaint: "(1) fails to state any factual claims against Dr. Poczatek; (2) fails to include any detailed specification and factual description of any act or omission and is thus deficient under the Alabama Medical Liability Act; [and] (3) fails to state legally cognizable claims because the conclusory allegations against Dr. Poczatek are refuted by the specific allegations against the Removing Defendants."  (Doc. 9 at 3.)

The complaint is certainly not an example of detail or clarity, but does that mean the claims against Poczatek are fraudulently pled in order to avoid federal jurisdiction?   The test to answer that question is whether there is "any reasonable possibility, based on this record, that Plaintiff[] can establish a cause of action . . . against [Poczatek]."  *Legg v. Wyeth,* 428 F.3d 1317, 1324 (11th Cir. 2005).

Plaintiff's claim against Poczatek appears to  be either (1) Poczatek knew of the potential defects and was negligent in prescribing the patch (that is, when he prescribed the patch, his conduct fell below the required standard of care) or (2) Poczatek knew of the potential defects, and thus the risks, of using the patch but prescribed the treatment without disclosing

the potential risks (arguably, that he treated Stone without obtaining informed consent).[2] The Alabama Supreme Court explained the difference between the types of malpractice cases as follows:

> Nevertheless, lack of informed consent cases are different, somewhat, in type from negligent treatment cases: generally speaking, the act of treatment should not occur without the act of obtaining informed consent. If the patient is injured during treatment, his injury will be the result either of the physician's acts during the treatment or of the physician's failure to fully disclose prior to the treatment risks or consequences associated with the treatment.

*Horton v. Shelby Medical Center,* 562 So. 2d 127, 130 (Ala. 1989).

The Alabama Supreme Court has concluded that informed-consent claims against physicians are governed by the Alabama Medical Liability Act ("the AMLA"). *See Otwell v. Bryant*, 497 So. 2d 111 (Ala.1986). Furthermore, that court also "held that claims brought against health-care providers purporting to be claims under the Alabama Extended Manufacturer's Liability Doctrine ('AEMLD') are governed by the AMLA, when

---

[2]The Court notes that Plaintiff does not attempt to state a claim against Poczatek for failure to investigate the patch before prescribing it. All of Plaintiff's contentions with regard to Poczatek generally conclude with an allegation that he failed to warn of the dangers of the patch.

the act forming the basis of the patient's claims occurred during the course of the treatment and constituted the treatment sought from the health-care provider." *Collins v. Ashurst,* 821 So. 2d 173, 176 -77 (Ala. 2001).  In other words, either of the claims the Plaintiff may have against Poczatek will have to comply with the AMLA.

In order to comply with the AMLA, "[t]he plaintiff shall include in the complaint filed in the action a detailed specification and factual description of each act and omission alleged by plaintiff to render the health care provider liable to plaintiff and shall include when feasible and ascertainable the date, time, and place of the act or acts . . . . Any complaint which fails to include such detailed specification and factual description of each act and omission shall be subject to dismissal for failure to state a claim upon which relief may be granted."  Ala. Code § 6-5-551.

Clearly, matters such as the date of treatment, when ascertainable, should have been included in the complaint.  However, the complaint in this action not only fails to allege any date of treatment, but it also fails to even state the year of treatment or the date of Stone's death.  Without such information, the complaint is clearly insufficient under the AMLA, and the

Court cannot conclude that there is a reasonable possibility Plaintiff can establish a cause of action against Poczatek. "The potential for legal liability [against Poczatek] . . . '[] must be reasonable, not merely theoretical." *Legg,* 428 F.3d at 1325 n.5 (11th Cir. 2005)(quoting *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002)).

The parties were free to submit affidavits in support of and/or in opposition to Plaintiff's motion to remand.  *See id*.  If they had, perhaps some or all of the answers to the Court's questions would be more readily discernable.  "The determination of whether a resident defendant has been fraudulently joined must be based upon the plaintiff's pleadings at the time of removal, supplemented by any affidavits and deposition transcripts submitted by the parties." *Id*. at 1322 (citing *Pacheco de Perez v. AT&T Co.*, 139 F.3d 1368, 1380 (11th Cir.1998)) (emphasis omitted).  Since neither party submitted affidavits, this Court will consider Plaintiff's motion to remand without any additional information.

The complaint asserts that "Dr. Robert Poczatek, was under a duty to warn the deceased Plaintiff of any notice he had received or became aware of concerning potential manufacturing defects associated with the medication he prescribed." (Compl. at 5.) The complaint also states that Poczatek breached the applicable standard of care, but the complaint fails to assert that the doctor actually received any information that would put him on notice of the alleged defects or risks.[3] Further, in direct contradiction to the notion that Poczatek had any knowledge of the risks or defects, Plaintiff stated in his complaint that the removing defendants "failed to warn Plaintiff and other consumers of the defective condition of the patch . . . ," and the removing defendants "supplied false information regarding the safety and efficacy of the patch for the guidance of others, including Joshua Stone." (*Id.* at 8.) Plaintiff also adds that the removing defendants "exercised substantial control over the content of the warnings

---

[3]Again, Plaintiff uses the term "Defendants" quite liberally throughout the complaint. However, all assertions that "Defendants" had knowledge of actual defects with the patch reference manufacturing, design, or similar conduct in which Poczatek is not alleged to have played a part. At best, Plaintiff has alleged that Poczatek knew a defective patch could cause injury (Compl. at 5)—not that the patch in question actually was or could be defective.

and/or instructions, . . . knew or should have known of the risks at the time they marketed, sold, and/or distributed the Patch, but failed to provide warnings of the dangers or instructions for safe use and/or failed to provide adequate warnings and/or instructions." (*Id.* at 6.)

It is true that "[w]hen [considering a motion to remand], the district court must 'resolve all questions of fact . . . in favor of the plaintiff." *Cabalceta v. Standard Fruit Co.*, 883 F.2d 1553, 1561 (11th Cir. 1989). "But there must be some question of fact before the district court can resolve that fact in the plaintiff's favor." *Legg,* 428 F.3d at 1323. Without at least an allegation that Poczatek had knowledge of the risks and alleged defects of which Plaintiff contends he should have warned Stone, there is no question of fact to resolve. Plaintiff certainly wanted to make out a medical malpractice claim against Poczatek. However, he did not—even when he had the opportunity to supplement with affidavits. Therefore, this Court is left with the conclusion that under the ethical requirements that restrain pleadings, he could not.

Perhaps in an effort to get around the pleading and ultimate proof requirements of a medical malpractice claim, the Plaintiff attempts to

utilize the doctrine of learned intermediary to impose a duty upon Poczatek to inform Stone of those risks. (Compl. at 5.) The doctrine of learned intermediary is occasionally utilized by manufacturers and distributors of prescription medicines to insulate them from the necessity of educating consumers of the inherent risks of their products.

The Alabama Supreme Court explained the learned intermediary doctrine as follows:

> [W]here prescription drugs are concerned, the manufacturer's duty to warn is limited to an obligation to advise the prescribing physician of any potential dangers that may result from the drug's use. This special standard for prescription drugs is an understandable exception to the Restatement's general rule that one who markets goods must warn foreseeable ultimate users of dangers inherent in his products. *See Restatement (Second) of Torts*, Section 388 (1965). Prescription drugs are likely to be complex medicines, esoteric in formula and varied in effect. As a medical expert, the prescribing physician can take into account the propensities of the drug as well as the susceptibilities of his patient. His is the task of weighing the benefits of any medication against its potential dangers. The choice he makes is an informed one, an individualized medical judgment bottomed on a knowledge of both patient and palliative. Pharmaceutical companies then, who must warn ultimate purchasers of dangers inherent in patent drugs sold over the counter, in

selling prescription drugs are required to warn only the prescribing physician, who acts as a "learned intermediary" between manufacturer and consumer.

*Walls v. Alpharma USPD, Inc.*, 887 So. 2d 881, 884 (Ala. 2004).

This explanation is consistent with the opinion of the Eleventh Circuit Court of Appeals:

> In cases involving complex products, such as those in which pharmaceutical companies are selling prescription drugs, the learned intermediary doctrine applies. *See Stone v. Smith, Kline & French Labs.*, 731 F.2d 1575, 1579-1580 (11th Cir.1984). Under the learned intermediary doctrine, a manufacturer's duty to warn is limited to an obligation to advise the prescribing physician of any potential dangers that may result from the use of its product. *Id.* This standard is "an understandable exception to the Restatement's general rule that one who markets goods must warn foreseeable ultimate users of dangers inherent in his products." *Id.* at 1579 (internal citation omitted). As such, we rely on the expertise of the physician intermediary to bridge the gap in special cases where the product and related warning are sufficiently complex so as not to be fully appreciated by the consumer. In *Toole I*, we held that "[u]nder the 'learned intermediary doctrine,' the adequacy of Baxter's warning is measured by its effect on the physician, . . . to whom it owed a duty to warn, and not by its effect on Ms. Toole." 999 F.2d at 1433.

Toole v. Baxter Healthcare Corp. 235 F.3d 1307, 1313 -14 (11th Cir. 2000).

The learned intermediary doctrine purports to describe the drug manufacturer's duty to disclose—not the treating physician's duty.  It, standing alone, imposes no requirement that Poczatek inform Stone of any risks he may have learned from the removing defendants or elsewhere.  That is not to say, however, that there is no such duty—only that if it exists, it is not grounded in that doctrine alone.  If Poczatek had a duty to disclose anything he had learned from any source to Stone, it was because of his doctor-patient relationship with Stone, not because the defendants manufacturing, designing, and selling the drugs may have chosen to rely on the learned intermediary doctrine to only educate the medical care providers.  Even though Plaintiff's use of the learned intermediary doctrine is interesting and arguably could, under the right circumstances, support a conclusion that a doctor was under a duty to disclose information to his or her patient, this Court need not address that issue.  It is clear when the factual allegations in the complaint are assumed to be correct, that Poczatek received, at best, insufficient disclosures as well as disclosures that constituted "false information regarding the safety and efficacy of the

patch . . . ." (Compl. at. 8.)  Each claim made by Plaintiff begins, and in this instance ends, upon the inquiry: did Dr. Poczatek know about the alleged defects and risks?  The complaint does not say that he did.

V. Conclusion.

For the reasons herein stated, this Court finds that Poczatek was fraudulently joined and is to be ignored for the purpose of considering diversity of citizenship. *See Henderson v. Washington Nat. Ins. Co.*, 454 F.3d 1278, 1281 (11th Cir. 2006).  Plaintiff's motion to remand will therefore be denied.  Further, Poczatek's motion to dismiss himself from this action is due to be granted without prejudice.  A separate order consistent with this Opinion is issued herewith.

Done this 15th day of March 2007.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
139297